Argued and submitted January 6, judgment of the Tax Court affirmed
March 23, 1995

## STC SUBMARINE, INC.,
a foreign corporation,
*Appellant,*

*v.*

## DEPARTMENT OF REVENUE,
State of Oregon,
*Respondent.*

## (OTC 3426; SC S41085)

890 P2d 1370

Carl N. Byers, Judge.

David L. Canary, of Garvey, Schubert & Barer, Portland, argued the cause for appellant. With him on the briefs was Richard Baroway, Portland.

Joseph Laronge, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Theodore R. Kulongoski, Attorney General, Salem.

DURHAM, J.

## DURHAM, J.

Taxpayer manufactures and assembles marine fiber optic cable. In this *ad valorem* tax case, taxpayer appeals the assessed value of its building and structures for the 1991-92 tax year.[1] The Tax Court accepted the assessment of $11,737,920 made by the Department of Revenue (department). *STC Submarine, Inc. v. Dept. of Rev.*, 13 OTR 14 (1994). We review *de novo*, ORS 305.445; ORS 19.125, and affirm.

The subject property was designed specifically for taxpayer's use in manufacturing undersea fiber optic cable. The factory is a one-story building with a total area of 222,200 square feet. The ground floor is used to manufacture, store, and test cable, and the second floor provides office space. The ceiling is higher than are ceilings in typical industrial plants, ranging from 37 1/2 feet to 54 feet, in order to minimize the bending of the cable during the manufacturing process. The building contains eight large concrete tanks, 36 feet in diameter and 18 1/2 feet deep, for testing and storing cable. The building has a heavy-duty foundation and thick concrete floors to accommodate the weight of the tanks and the use of large manufacturing machinery. The property also includes a marine dock,[2] adjacent to the building, to allow direct loading and unloading of oceangoing vessels.

ORS 308.411(1)[3] requires valuation of industrial plants at their "real market value," which ORS 308.205(1)[4] defines as

"the minimum amount in cash which could reasonably be

---

[1] Taxpayer does not appeal the assessed value of its land, machinery, or equipment.

[2] The parties do not dispute the value of the dock.

[3] ORS 308.411(1) provides:

"Except as provided in subsections (2) to (9) of this section, an industrial plant shall be valued for ad valorem tax purposes under ORS 308.205, 308.232 and 308.235 at its real market value utilizing the market data approach (sales of comparable properties), the cost approach (reproduction or replacement cost of the plant) or the income approach (capitalization of income) or by two or more approaches."

[4] ORS 308.205(1) codified the definition of "real market value" contained in Article XI, section 11b, of the Oregon Constitution, which resulted from Ballot Measure 5, a 1990 initiative measure.

> expected by an informed seller acting without compulsion from an informed buyer acting without compulsion, in an arm's-length transaction during the fiscal year."

Taxpayer argues that, on the assessment date, the real market value of its building and structures was $7,360,000. The department maintains that the value was $11,737,920. The disparity between the parties' appraisals results from differing opinions about the highest and best use of the property, on which value is based. As the Tax Court explained, the highest and best use of property is the use "to which a property can most profitably be put." *STC Submarine, Inc.*, 13 OTR at 18.[5]

■ Taxpayer argues that, on the assessment date, the worldwide market for fiber optic cable was falling and, for that reason, there was no immediate market for a marine fiber optic cable manufacturing plant. According to taxpayer, the highest and best use of its property was for general-purpose industrial use. It relies on the fact that, as of the assessment date, the three existing companies that manufactured undersea fiber optic cable recently had acquired or built their own plants. Taxpayer's appraiser concluded that taxpayer could expect to receive only $7,360,000 for its building and structures, because no prospective purchaser would pay for the property's "superadequacies," which are the improvements designed specifically to accommodate the manufacture of marine fiber optic cable.

The department concluded that the highest and best use of the property's building and structures on the assessment date was their existing use, because the market for undersea fiber optic cable remained viable at the time. The department's appraiser made no deductions from value for the property's special features, because they support the existing use.

---

[5] Determining the "highest and best use" of the property is one step in the process of arriving at the property's "real market value." ORS 308.205(2), which provides guidance in applying the statutory definition of "real market value," provides, in part, that "real market value" reflects "[t]he minimum amount a typical seller would accept or the highest amount a typical buyer would offer which could reasonably be expected by a seller of property." One rationale for relying on "highest and best use" as a step in arriving at market valuation is that a seller of property reasonably can expect to receive the highest offer from a prospective buyer who intends to put the property to its most profitable use.

This court addressed a similar dispute in *Freedom Fed. Savings and Loan v. Dept. of Rev.*, 310 Or 723, 801 P2d 809 (1990). In that case, the taxpayer asserted that the highest and best use of its property was as a multi-tenant office building, rather than its existing use as the headquarters for a financial institution. The taxpayer argued that the decline of the savings and loan industry made it highly improbable that another financial institution would have desired to purchase the property on the assessment dates. In rejecting that argument, this court explained:

"The question whether an immediate market exists for a building at a particular use is separate * * * from the question whether that use is highest and best. If taxpayer were correct, then ORS 308.205(1) would have little purpose. ORS 308.205(1) provides for the valuation of property that has no immediate market: 'If the property has no immediate market value, its true cash value is the amount of money that would justly compensate the owner for loss of the property.' The *first* issue is the highest and best use of the property; the *second* issue is the market value of the property at that use." 310 Or at 726-27 (emphasis in original).

As in *Freedom Fed. Savings and Loan*, we reject taxpayer's contention that, because there was no immediate market for the existing use of the property on the assessment date, the department was required to value the property at an alternative use. The nonexistence of an immediate market for a marine fiber optic cable manufacturing plant on the assessment date does not necessarily mean that taxpayer's existing use of the building and structures is not the highest and best use. As the Tax Court observed:

" 'The highest and best use of a special purpose property as improved is probably the continuation of its current use, if that use remains viable.' " *STC Submarine, Inc.*, 13 OTR at 19 (quoting Appraisal Institute, *The Appraisal of Real Estate* 293 (10th ed 1992)).

The department's appraiser testified that, as of the assessment date, there was a substantial demand and market for undersea fiber optic cable. Taxpayer's witness, Roussell, acknowledged that such demand existed. We find that, as of the assessment date, there was a strong active market for marine fiber optic cable and that continuation of the property's existing use remained viable.

■ Taxpayer's reliance on the fact that existing undersea fiber optic cable manufacturers already had their own plants ignores the possibility of new entrants into the marine fiber optic cable manufacturing business or the possibility that an existing company might have needed additional capacity and purchased taxpayer's entire operation, including its building and structures, to meet that need. Taxpayer's reliance on evidence of market saturation and shrinkage *after* the assessment date is misplaced. Whether the "highest and best use" of the property would continue to be its existing use *after* the assessment date does not determine the question of highest and best use *on* the assessment date. *Freedom Fed. Savings and Loan*, 310 Or at 726.

■ Taxpayer also argues that, in determining the "highest and best use" of its property, the Tax Court erroneously focused on whether a market demand existed for the *products and services* that the property was designed to provide, rather than on whether a market existed for its building and structures. We disagree. The department's evidence that, as of the assessment date, a market demand continued to exist for taxpayer's products and services supports the department's conclusion that taxpayer's existing use of its building and structures was their "highest and best use."[6] We find that the highest and best use of the subject property on the assessment date was its existing use as a marine fiber optic cable manufacturing plant.

■ Having determined the highest and best use, we now consider the value of the property at that use. The parties agree that, on the assessment date, no immediate market

---

[6] In determining the "highest and best use" of taxpayer's building and structures, the department properly considered the continued viability of taxpayer's entire operation. The following example from Professor Bonbright's treatise, I *The Valuation of Property* (1937), illustrates the point. Suppose that a prosperous water company has its reservoir in one county and its purifying plant and offices in another county. One may have little value without the other. As Professor Bonbright explains:

"Like one glove or half a fountain pen, each part alone may be almost valueless. So, too, though our water company is a valuable business organism, the sum of what would be received from separate sales of the assets on each side of the county line would be ridiculously small." *Id.* at 493.

The value of taxpayer's building and structures, like the value of the water company's reservoir in Professor Bonbright's example, should not be measured in isolation, but rather in relation to the value of the operation as a whole.

existed for the property's building and structures at their existing use.

ORS 308.205(2)(c) provides:

"If the property has no immediate market value, its real market value is the amount of money that would justly compensate the owner for loss of the property."

To implement that statute, the department has adopted OAR 150-308.205(A)(3), which provides:

"Especial property is property specially designed, equipped and used for a specific operation or use which is beneficial to only one particular user. This may occur because the especial property is part of a larger total operation or because of the specific nature of the operation or use, but in either case, the improvement's usefulness is designed without concern for marketability. Since a general market for the property does not exist, the property has no apparent immediate market value. Real market value shall be determined by estimating just compensation for loss to the owner of the unit of property through either the cost or income approaches, whichever is applicable, or a combination of both."

The department's appraiser concluded that there were no comparable properties with the same special design features that would provide appropriate comparisons from which he could derive a market value. Consequently, he applied ORS 308.205(2)(c) and OAR 150-308.205(A)(3), and used a cost approach to determine the value that would justly compensate taxpayer for the loss of the property.

Taxpayer does not dispute the Tax Court's finding that the subject property is "especial property" within the meaning of that administrative rule. Taxpayer argues, however, that application of the administrative rule resulted in a valuation that exceeds the subject property's "real market value," because the department's assessment reflects the property's "value-in-use," rather than the property's "value-in-exchange."

As the Tax Court explained, "value-in-exchange" refers to "the amount at which property will change hands in the marketplace." *STC Submarine, Inc.*, 13 OTR at 21. By contrast, "value-in-use"

" *'is the value a specific property has for a specific use.* Use value focuses on the value the real estate contributes to the enterprise of which it is a part, without regard to the property's highest and best use or the monetary amount that might be realized on its sale.' " *Id.* at 22 (quoting Appraisal Institute, *The Appraisal of Real Estate* at 22) (emphasis in original).

In *Truitt Brothers, Inc. v. Dept. of Rev.*, 10 OTR 111, 114 (1985), the Tax Court held that a property's "real market value" is its value-in-exchange, rather than its value-in-use:

"[V]alue in use may exceed market value or value in exchange. For example, a property may be designed to produce a special product, the patent for which is held only by the owner of the property. Such a property would have little value to any other person but could be of great value to the owner of the patent."

Relying on *Truitt Brothers, Inc.*, taxpayer argues that the property's "superadequacies" add value to the property only if it is used to manufacture marine fiber optic cable and that a valuation that fails to deduct for those special design features represents a "value-in-use," rather than a "value-in-exchange." Taxpayer presented no evidence indicating that the property's "superadequacies" would not be equally valuable to any purchaser who planned to continue to use the property to manufacture undersea fiber optic cable. To the extent that the property's special design features would be equally valuable to any other manufacturer of marine fiber optic cable, the value of such "superadequacies" is part of the property's "value-in-exchange."

Taxpayer's argument that the department's appraisal represents a value-in-use, because it does not deduct for features that are valuable only to another undersea fiber optic cable manufacturer, simply may be another way of saying that the "highest and best use" of the subject property is not its existing use. We have already determined that the highest and best use of taxpayer's building and structures is to manufacture marine fiber optic cable. The building's special features, designed to accommodate that use, are part of the property's value-in-exchange, because they increase the amount at which the property would change hands in the marketplace.

■ Taxpayer has the burden to show that its approach to valuation best reflects the property's "real market value." ORS 305.427; *Freedom Fed. Savings and Loan*, 310 Or at 727. We are not persuaded to adopt taxpayer's approach. The difference between the parties' appraisals reflects their disagreement about the property's highest and best use. Because we have found that the property's highest and best use is as a marine fiber optic cable manufacturing plant, we conclude that the department's appraisal best represents the property's "real market value." We conclude that the value of taxpayer's building and structures on the assessment date was $11,737,920.

The judgment of the Tax Court is affirmed.