IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

LOWE'S HIW, INC.,                 )
)
       Plaintiff,            )   TC-MD 210115R; 210116R
)
    v.                    )
)
MARION COUNTY ASSESSOR,     )
)   **ORDER ON DEFENDANT'S MOTION**
      Defendant.       )   **TO COMPEL DISCOVERY**

This matter came before the court on Defendant's Motion to Compel Discovery

(Motion), filed December 1, 2021, requesting the court compel production of certain documents.

Plaintiff filed its Response in Opposition (Response), requesting the court deny Defendant's

Motion on December 15, 2021. Defendant filed a Reply to Plaintiff's Response on December

16, 2021. Oral argument on the Motion was held January 12, 2022.

## I. STATEMENT OF FACTS

Plaintiff appeals the Board of Property Tax Appeals' order sustaining the real market

value (RMV) of Property Tax Account R337298 (subject property) for the 2020-21 tax year.

(*See* Compl at 2.)

On June 29, 2021, Defendant sent a request for production to Plaintiff. (Mot at 1.) Four

of those requests are at issue in Defendant's Motion as follows:

> Request 7: "All documents describing the profitability and viability of the Lowe's
> operation at the subject property, or the criteria used to measure the profitability
> and viability of the Lowe's operation at the subject property, including but not
> limited to company metrics used to compare the viability of operations of its stores,
> revenues, expenses, and customer counts."

> Request 8: "All documents comparing the profitability and viability of the Lowe's
> operation at the subject property to other Lowe's operations in Oregon."

> Request 25: "All documents that describe how internet sales are accounted for as it

impacts the operation at the subject property and its viability[;]"

Request 26: "All documents that describe how internet sales merchandise is supplied form [sic] individual stores and central warehouses including the subject property."

(Mot at 1-4). Plaintiff asserts the requested documents are highly confidential and not relevant. Defendant asserts the requests are relevant on the issue of highest and best use of the subject property.

## II. ANALYSIS

Tax Court Rule-Magistrate Division (TCR-MD) 9 requires parties make available any "relevant" documents requested in writing by the opposing party. A motion to compel discovery in the Magistrate Division must "state with sufficient particularity the items it seeks" and "the reasons for requesting those items." TCR-MD 9 B(1). The Regular Division Rules (TCR), permit parties to "inquire regarding any matter, not privileged, which is relevant to the claim or defense of the party seeking discovery."[1] TCR 36 B(1). A party may not object to a discovery request on the basis that it will be inadmissible at trial provided it is "reasonably calculated to lead to the discovery of admissible evidence." *Id.* ORS 40.150 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[2] Because the ultimate issue is the subject property's RMV, Defendant's requests will be relevant if they leads to the discovery of items that have a "tendency to make the existence of any fact that is of consequence" to the determination of RMV more or less probable. ORS 40.150.

---

[1] The court has not ordered the application of TCR 36 to 46 (governing discovery) in this case. However, the court looks to the Regular Division Tax Court Rules "as a guide" to the extent relevant. *See* TCR-MD Preface.

[2] Proceedings in the Magistrate Division are not bound by the "statutory rules of evidence" but may conduct hearings in any manner that will achieve substantial justice. ORS 305.501(4)(a). To that end, the court takes guidance from Oregon's Evidence Code (ORS Chapter 40).

Highest and best use is "the reasonably probable use of land * * * that is legally permissible, physically possible, financially feasible, and maximally productive, which results in the highest real market value." OAR 150-308-0240(1)(e). Determining highest and best use "is necessary for establishing real market value." OAR 150-308-0240(2)(i). The highest and best use analysis considers "all possible uses that might result from retaining, altering, or ceasing the integrated nature of the unit of property." *Id*.

A.     *Request 7*

Defendant first requests "all documents describing the profitability and viability of the Lowe's operation at the subject property, or the criteria used to measure the profitability and viability of the Lowe's operation at the subject property, including but not limited to company metrics used to compare the viability of operations of its stores, revenue, expenses, and customer counts." Defendant stated that the information in this request "provides insight into all four factors" of the highest and best use analysis, but in its later Reply, narrowed its focus to the "financial feasibility and maximal productivity" factors specifically. (*Id.*; Reply at 1.) During oral argument, Defendant explained that this information would be used as "just one data point" in the overall market data used to determine highest and best use. Plaintiff argues the information is irrelevant because it pertains "only to [the] property's value-in-use, and not its market value," and therefore does not help determine RMV. (Resp at 2.)

Defendant's reason for gathering this information comports with prior case holdings on the issue. *Hewlett-Packard Co. v. Benton Cty. Assessor*, 21 OTR 186 (2013), *aff'd*, 357 Or 598, 356 P3d 70 (2015) (noting that a economic financial feasibility study "is a question of fact, not the application of axioms—elements of logical analysis employed without regard to actual facts.") "Economic demand for the subject property is a requisite to the financial testing of

alternative uses." Appraisal Institute, *The Appraisal of Real Estate* 307 (15th ed 2020). In *STC Submarine v. Dept. of Rev.*, 320 Or 589, 596, 890 P2d 1370 (1995), the Oregon Supreme Court held the Tax Court "properly considered the continued viability of taxpayer's entire operation" because the continued market demand for the "taxpayer's products and services support[ed] the department's conclusion that taxpayer's existing use of its building and structures was their 'highest and best use.'" *See also STC Submarine* 320 Or at 594 n6. Highest and best use analysis "focuses on the uses to which a property can most profitably be put." *Id*. at 18. Similarly, in *Symantec Corp. v. Lane County Assessor*, 130286N, 2014 WL 1031303 at *8 (Or Tax M Div, Mar 17, 2014) the court pointed out that "[i]f the existing use will remain financially feasible and is more profitable than modification or redevelopment, the existing use will remain the highest and best use of the property as improved." (internal quotations omitted). The highest and best use analysis therefore requires a comparison of the current use's profitability and viability to the profitability and viability of an alternative use, and the operation at the subject property provides data on the profitability of the current use. Because profitability and viability of the current use of the subject property informs the determination of its highest and best use, the information Defendant seeks is generally relevant to the issue of RMV and is therefore relevant for the purpose of TCR-MD 9, and Defendant's reason is sufficiently stated.[3]

Defendant must also describe with "sufficient particularity" the items requested to prevail in their Motion. Defendant's request for "all documents" describing the profitability and viability of Plaintiff's operation at the subject property is extremely broad. "All documents" Plaintiff possesses about its profitability is likely to generate documents that are duplicative or

---

[3] The court neither accepts nor rejects Defendant's claim that profitability and viability information have "tremendous influence" on the highest and best use analysis but does reaffirm its holding that such information can inform a highest and best use analysis.

ultimately irrelevant to determining whether the current use is more probable than not its highest and best use. Defendant requests, in the alternative, "all documents" describing Plaintiff's criteria for measuring the viability of the operation at the subject property "including * * * metrics used to compare the viability of operations of its stores, revenues, expenses, and customer counts." (Mot at 2.) The court finds that revenues, expenses, and customer counts are relevant and sufficiently specific. However, insight into a single market participant's metrics and self-evaluations would likely reveal much about an individual participant's business acumen but little regarding the profitability and viability of the subject property.

In *Level 3 Communications, LLC v. Dept. of Rev.*, TC 5236, 5269, 5291, 2018 WL 4471078 (Or Tax Feb 21, 2018), the department similarly submitted a broad request for "all documents" pertaining to a sale of the company or its property. The court found that although the requested documents generally met the standard of relevance to the claim at issue, it determined the request for "all" documents would generate irrelevant documents. *Id*. at 4. The court ordered the parties to confer to limit the scope to prevent discovery of documents that were repetitive or exposed information irrelevant to the claim at issue.

The court comes to a similar conclusion here. Though the profitability and viability of the current use is generally relevant to determination of highest and best use, Defendant's request for "all documents" pertaining to that issue is not sufficiently particular for the purposes of TCR-MD 9. The court will grant Defendant's motion to compel with regards to documentation of the operation's profitability and viability, with the direction that parties: 1) confer to narrow the scope of the request to prevent discovery of duplicative and irrelevant documents and identify only those documents regarding profitability and viability information that are necessary for determining the most profitable use of the property; and 2) collaborate on a proposed protective

order regarding any discovered documents. Defendant's motion is granted with regard to the subject property's revenues, expenses, and customer counts. Defendant's motion is denied with regard to "company metrics" used to compare viability of its stores.

B.      *Request 8*

Defendant's Request 8 requests "all documents comparing the profitability and viability of the Lowe's operation at the subject property to other Lowe's operations in Oregon." (Mot at 2.) Defendant again argues that this information is important to determine the highest and best use of the property and more specifically to understand the likelihood that the subject property will be closed or redeveloped in the future. (Mot at 3.) Whether Lowe's as an operation intends to close that location is not relevant to the four factors used in a highest and best use analysis. As Plaintiff points out, that information has more to do with Lowe's business viability, capital, equity, and business plans as a whole as a going concern. As discussed, Oregon looks at "market value" not "going concern value" or value to a specific user. *Deschutes Cty. Assessor v. Broken Top Club, LLC*, 15 OTR 231, 237 (2000). Having already granted Defendant request for documents relating to the viability and profitability of the subject property, this information would either be duplicative or irrelevant. Defendant's Motion is denied regarding this request.

C.      *Request 25*

Request 25 looks for "all documents that describe how internet sales are accounted for as it impacts the operation at the subject property and its viability." During oral argument, Defendant explained that internet sales constitute a subset of data that contributes to the analysis of overall profitability and viability of the current use. Defendant explained in its Motion that a location that is profitable as both traditional retailer and pick-up location for online sales may not be as profitable as a store operating solely as a traditional retailer. Understanding the

profitability of these different uses, Defendant argues, impacts the highest and best use analysis. During oral argument, Defendant argued that this data would inform the financial feasibility and maximal productivity factors in particular. Defendant has stated with sufficient particularity the reason this request is relevant to the highest and best use analysis.

Again, Defendant has broadly requested "all documents," not describing any items with particularity. As with Request 7, the court will grant the Motion with regards to this request with the direction that parties: 1) confer to narrow the scope of the request to prevent discovery of duplicative and irrelevant documents and identify only those documents necessary for comparing profitability as a traditional retailer to profitability as retail acting in a traditional capacity and as a pick-up location for online sales to determine highest and best use; and 2) collaborate on a proposed protective order regarding any discovered documents.

D.    *Request 26*

Defendant's final request is for "all documents that describe how internet sales merchandise is supplied form [sic] individual stores and central warehouses including the subject property." (Mot at 4.) Similar to Request 25, Defendant's Motion argues that this request is designed to discover information about the viability of the current use. Defendant does not explain how a single market participant's supply chain structure informs a highest and best use analysis. As the court noted above, hypothetical alternate use, or another market participant using the same property at its current use, cannot be presumed to make the same business decisions of any other. As a result, this court is not convinced that this information as "one data point" is relevant to the highest and best use analysis.

/ / /

/ / /

### III.  CONCLUSION

The court grants Defendant's Motion in part, and denies in part as described with the direction that parties: 1) confer to narrow the scope of the request to prevent discovery of duplicative and irrelevant documents and identify only those documents regarding profitability and viability information that are necessary for determining the most profitable use of the subject property; and 2) collaborate on a proposed protective order regarding any discovered documents. The court grants defendant's motion with regard to its request for revenues, expenses and customer counts at the subject property but denies Defendant's Motion with regards to requests for documentation of Plaintiff's metrics and criteria for evaluating profitability and its request for documentation of Plaintiff's internet merchandise supply structure.  Now, therefore,

IT IS ORDERED that Defendant's Motion is granted in part and denied in part with instructions for the parties to meet and confer on the scope of the documents requested and a protective order.

_____

***This interim order may not be appealed.  Any claim of error in regard to this order should be raised in an appeal of the Magistrate's final written decision when all issues have been resolved.  ORS 305.501.***

***This document was signed by Magistrate Davis and entered on February 3, 2022.***