148 November 9, 2017 No. 60

IN THE SUPREME COURT OF THE
STATE OF OREGON

Barbara ELLISON,
*Plaintiff-Respondent,*
*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Defendant-Appellant,*
*and*

CLACKAMAS COUNTY ASSESSOR,
*Defendant.*
(TC 5177; SC S064092)

On appeal from a supplemental money judgment of the Oregon Tax Court.

Henry C. Breithaupt, Judge.

Argued and submitted June 14, 2017.

Denise G. Fjordbeck, Assistant Attorney General, Salem, argued the cause and filed the brief for appellant Department of Revenue. Also on the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Daniel Paul, Assistant Attorney General.

Jack L. Orchard, Ball Janik, LLP, Portland, argued the cause for respondent Barbara Ellison. Bruce H. Cahn and Jack L. Orchard filed the brief.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Nakamoto, and Flynn, Justices, and Brewer, Senior Justice pro tempore.*

BREWER, S. J.

The supplemental money judgment of the Tax Court is vacated. The matter is remanded to the Tax Court for further proceedings.

_____

* Duncan, J., did not participate in the consideration or decision of this case.

**BREWER, S. J.**

In the underlying property tax appeal, the Tax Court rejected a request by the Department of Revenue (department) and the county assessor to increase the real market value of taxpayer's property, and the court later awarded taxpayer attorney fees against the department under ORS 305.490(4)(a) (authorizing discretionary award of attorney fees in ad valorem taxation cases if "the court finds in favor of the taxpayer"). The department appeals the attorney fee award only. As we will explain, even though the Tax Court also rejected the taxpayer's request for a reduction in real market value, we conclude that the legal prerequisite for a discretionary attorney fee award under that statute—that the court found "in favor of the taxpayer"—was met. We also conclude that the Tax Court did not err in applying most of the factors on which it relied in making the fee award. However, we conclude that the court's use of one factor was erroneous, thus bringing into question the court's overall exercise of discretion. Accordingly, we vacate the attorney fee award and remand for the court to exercise its discretion without considering that factor.

## I.   OVERVIEW

### A.   *The Underlying Appeal*

Even though this case involves only the propriety of a discretionary award of attorney fees, the Tax Court's decision on the merits in the underlying property tax appeal provides the necessary context for our analysis. At issue in that appeal was the real market value for tax year 2011-12 of two tax lots (the property) owned by taxpayer. The tax lots are part of a high-end horse breeding and training facility and an associated residence. Taxpayer substantially completed construction before January of 2011, and thus the value for that year would establish an exception value for the property.[1]

The county assessor originally found a real market value for the two tax lots, both land and improvements,

---

[1] As discussed in greater detail below, an exception value permissibly exceeds otherwise applicable constitutional limits on the amount by which property values can periodically increase for tax purposes.

of $9,279,571. Taxpayer appealed that value to the county Board of Property Tax Appeals (BOPTA). BOPTA affirmed without changing that value.

Taxpayer next appealed to the Magistrate Division of the Oregon Tax Court. Before the magistrate, the department and assessor asserted a real market value of $18,275,412. Taxpayer, by contrast, appears to have asserted a much lower real market value than that affirmed by BOPTA (although the exact amount does not appear in the record). The magistrate accepted neither value, nor was she able to determine the correct real market value from the appraisals provided. She therefore affirmed BOPTA's determination of real market value.

Taxpayer then appealed to the Regular Division of the Tax Court. Her complaint asserted a real market value of less than $4.8 million,[2] though by the time of trial she had revised that upward to $8.8 million. In contrast, in their answer to taxpayer's complaint in the Regular Division, the department and county assessor asserted a value of almost $20 million, which was slightly higher even than the amount they had originally asserted before the magistrate.[3]

At trial, the parties offered appraisals to support their respective valuations. Both appraisers agreed that the cost approach was the best way to determine real market value. Their primary disagreement concerned the question of external obsolescence and its effect, if any, on the value of the property. In asserting a lower value, taxpayer's appraiser, Gilmore, concluded that there was significant external obsolescence. In support of the department's proposed

---

[2] That was the value asserted for the two tax lots at issue here, plus six other tax lots. Taxpayer would later agree that only two lots were at issue in the appeal.

[3] The department asserted that value in its answer, but it did not separately plead a counterclaim. In its decision on the merits, the Tax Court acknowledged its prior holding that counterclaims have no "statutory validity" in the Tax Court, but nevertheless concluded that ORS 305.412 permits a party to request a value "above or below that determined in prior proceedings." *Ellison v. Clackamas County Assessor*, 22 OTR 201, 202 n 1 (2015). The parties do not dispute the Tax Court's understanding of ORS 305.412. Nor do they challenge that court's prior decision addressing counterclaims. *See Village at Main Street Phase II, LLC II v. Dept. of Rev.*, 360 Or 738, 745 n 4, 387 P3d 374 (2016) (noting Tax Court's holding regarding counterclaims, but without determining correctness of holding). Regardless, the county assessor did plead a counterclaim for the higher value.

higher value, its appraiser, Healy, asserted that there was no external obsolescence at all.[4] Before turning to a more detailed review of the two appraisals, it is useful to provide an overview of several property valuation principles that were factors in the underlying appeal.

B.  *Valuation Principles*

The starting point for calculating property taxes is the property's real market value. *Dept. of Rev. v. River's Edge Investments, LLC*, 359 Or 822, 825, 377 P3d 540 (2016). For that purpose, "real market value" is defined in essence to be what a buyer would pay a seller in an arm's length transaction on the assessment date. Or Const, Art XI, § 11(11)(a)(A);[5] ORS 308.205(1).[6] To determine the real market value of property, appraisers use three approaches: the cost approach, the income approach, and the comparable sales approach. OAR 150-308.205-(A)(2)(a). The approaches are named for the types of indicators that the appraiser uses to estimate the value that a purchaser in the market would pay for the property. The cost approach considers "the cost of constructing a substitute property that provides the same utility as the subject property at its highest and best use"; the income approach relies on the income stream that the property generates; and the comparable sales approach examines the prices that buyers have paid for similar properties. *See Hewlett-Packard Co. v. Benton County Assessor*, 357 Or 598, 603, 356 P3d 70 (2015). Appraisers must consider each approach, but they need not use them all. *See, e.g.*, *River's Edge*, 359 Or at 827. An appraiser may well conclude that one of the three approaches represents the best

---

[4] Strictly speaking, the county assessor was the party who offered Healy's testimony. At trial, however, the department effectively adopted Healy's testimony, declining to offer its own appraisal. To avoid unnecessarily confusing terminology, we will sometimes refer to Healy as "the department's appraiser."

[5] That subsection of the constitution provides:

"The real market value of property shall be the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year, as established by law."

[6] Unless otherwise noted, all references to the pertinent statutes and administrative rules are to the versions in effect on January 1, 2011, the assessment date for the 2011-12 tax year. *See* ORS 308.007 (defining "assessment date" and explaining relation to "tax year").

approximation for the real market value. Appraisal Institute, *The Appraisal of Real Estate* 600 (12th ed 2001) (appraiser weighs approaches "and relies most heavily on the approach that is most appropriate to the nature of the appraisal problem"); *see, e.g., Brooks Resources Corp. v. Dept. of Revenue*, 286 Or 499, 505-07, 595 P2d 1358 (1979) (on facts of that case, court concluded that income approach provided better measure of value than cost approach).

Another type of property value is use value (also known as "value in use"). Use value essentially looks to the economic value that the property has to its current owner, without regard to what price the property might draw in the market. *Appraisal of Real Estate* at 24-25; *STC Submarine, Inc. v. Dept of Rev.*, 320 Or 589, 595-96, 890 P2d 1370 (1995) (to same effect). Use value often differs from market value, and it can be significantly higher than market value:

> "'For example, a property may be designed to produce a special product, the patent for which is held only by the owner of the property. Such a property would have little value to any other person but could be of great value to the owner of the patent.'"

*STC Submarine*, 320 Or at 596 (quoting *Truitt Brothers, Inc. v. Dept. of Rev.*, 10 OTR 111, 114 (1985)).

In some cases, a property has no immediate market value. In that circumstance, the "real market value" is the amount that would justly compensate the owner if the property were lost. ORS 308.205(2)(c).[7] Although this court does not appear to have directly addressed the issue, the Tax Court has held that the just compensation standard in ORS 308.205(2)(c) is not use value; it is still market value. *Truitt Brothers, Inc. v. Dept. of Rev.*, 10 OTR 111, 113-15 (1985), *aff'd on other grounds*, 302 Or 603, 732 P2d 497 (1987) (discussing

---

[7] That statute provides:

"(2) Real market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue and in accordance with the following:

"* * * * *

"(c) If the property has no immediate market value, its real market value is the amount of money that would justly compensate the owner for loss of the property."

concepts and explaining its conclusion). The department's rule implementing ORS 308.205(2)(c), the "especial property" rule, comports with that understanding. It states that, if comparable sales are not available for a property, then "real market value" will be determined using only the cost approach and/or the income approach. OAR 150-308.205-(A)(3).[8] In their briefing to the Tax Court, the department and county assessor both adopted that understanding of the statute and rule.

In this case, both parties used the cost approach. In doing so, the major difference between the appraisers' opinions was whether and to what extent the property had external obsolescence (sometimes also called economic obsolescence). External obsolescence is

"a loss in value caused by factors outside a property. It is often incurable. External obsolescence can be either temporary (*e.g.*, an oversupplied market) or permanent (*e.g.*, proximity to an environmental disaster)."

*Appraisal of Real Estate* at 412; *see J.R. Simplot Co. v. Dept. of Rev.*, 321 Or 253, 260, 897 P2d 316 (1995) (same). Because of its amorphous quality, external obsolescence has been called a "'ghostly apparition,'" a "'spirit whose presence may be discerned but whose intangible nature defies measurement'"; "'it confuses and chills the marketplace.'" *Truitt Brothers, Inc. v. Dept. of Rev.*, 302 Or 603, 611, 732 P2d 497 (1987) (quoting *Truitt Brothers*, 10 OTR at 118).

One final legal concept is relevant to the issues here. The Oregon Constitution creates a limit on the value at which real property may be assessed. Or Const, Art XI, § 11; *see Gall v. Dept. of Rev.*, 343 Or 293, 295, 170 P3d 558

---

[8] Specifically, that rule states:

"(3) Valuation of Especial Property: Especial property is property specially designed, equipped, and used for a specific operation or use that is beneficial to only one particular user. This may occur because the especial property is part of a larger total operation or because of the specific nature of the operation or use. In either case, the improvement's usefulness is designed without concern for marketability. Because a general market for the property does not exist, the property has no apparent immediate market value. Real market value must be determined by estimating just compensation for loss to the owner of the unit of property through either the cost or income approaches, whichever is applicable, or a combination of both."

(2007) (explaining). That limit is known as the maximum assessed value. Or Const, Art XI, § 11(1)(a); *Gall*, 343 Or at 295. Ordinarily, a property's maximum assessed value can only increase by three percent per year. Or Const, Art XI, § 11(1)(b); ORS 308.146(1). In specified exceptional circumstances, however, the maximum assessed value is calculated differently, and it can increase by more than three percent in a particular year. *See* Or Const, Art XI, § 11(1)(c); ORS 308.146(3) (listing circumstances). When such an exception applies, the result is sometimes colloquially called the exception value. *See Douglas County Assessor v. Crawford*, 21 OTR 6, 7 (2012) (discussing term). One situation in which there is an exception value is for new improvements to property. Or Const, Art XI, § 11(1)(c)(A); ORS 308.146(3)(a). The exception value becomes the new maximum assessed value in future years and will otherwise be subject to the three percent limit. *See* Or Const, Art XI, § 11(1)(d). For that reason, the exception value has long-term implications for the tax that may be assessed against the property.

With that preface, we turn to the parties' appraisals.

C. *Appraisal Evidence*

Taxpayer's appraiser, Gilmore, had valued hundreds of equine properties all over the nation. He concluded that there was a market for the property, but it was a national market. Based on a detailed analysis of sales of those properties, he testified that purchasers would not pay the cost that the owner of this property had incurred in adding the various improvements. Thus, while Gilmore used the cost approach, he concluded that the property suffered substantial external obsolescence of 50 percent. That led to his ultimate value for the property of $8,800,000.

Healy—the department's appraiser—had no experience with valuing agricultural business properties generally (except a few hobby farms), or with equine properties, or with valuing especial properties; his experience was largely limited to residential properties. In searching for comparable sales, Healy referred to fewer sources than Gilmore, and his sources were more general than Gilmore's. Healy's analysis of the few sales that he did locate was limited to determining whether the property as a whole was comparable to

taxpayer's. Moreover, he did not break taxpayer's property down into component parts to determine if external obsolescence applied to such individual improvements as fencing or the horse arena.

Based in part on a decision to limit the market to properties in Oregon, Healy concluded that the subject property had no immediate market value: in his view, it was an especial property under OAR 150-308.205(A)(3), and therefore it was subject to the just compensation standard of ORS 308.205(2)(c). Healy's testimony showed that he believed that the just compensation standard is different from real market value and more akin to use value.[9] Later, however, Healy testified that his value did not depend on whether the property was, in fact, especial.

Because Healy had found no market data within the market as he defined it, he concluded that there was no external obsolescence at all. Accordingly, Healy opined that the just compensation value of the property would be the full cost that taxpayer had spent improving it, without deducting anything for depreciation or external obsolescence. His final value was $19,815,225.

D.   *The Tax Court's Decision On The Merits*

The Tax Court ultimately rejected both appraisals, explaining in a written opinion that it found that neither one met the relevant burden of proof. *Ellison v. Clackamas*

---

[9] The relevant exchange was as follows:

"THE COURT:  *** [U]nder your understanding of this statute and rule, do you think that the amount to justly compensate the owner for the loss of property is any different from the real market value of the property? ***

"*****

"Just from your point of view as an appraiser, would you—when you look at all of this, do you—would you think that there could be a just compensation to the owner that is greater than the real market value?

"THE WITNESS: Well, the 'real market value' being defined as something derived from market sales? Because if—

"THE COURT: No. The real market value being defined as the amount that a willing buyer would pay a willing seller, neither acting under compulsion.

"THE WITNESS: Then, yes, quite possibly, there could be a big difference, but—

"THE COURT:  Okay. Thank you."

*County Assessor*, 22 OTR 201 (2015). In so holding, however, the Tax Court gave some credit to Gilmore's testimony because (1) he was experienced in appraising farm properties in general and horse properties in particular; (2) he had correctly concluded that the relevant market was national, not local; and (3) he had correctly opined that there should be *some* substantial deductions for economic obsolescence. 22 OTR at 205. The Tax Court rejected taxpayer's appraisal, however, primarily because the court was not persuaded by Gilmore's opinion as to the *amount* of obsolescence. The court also critiqued some of Gilmore's other steps in the appraisal process. *Id.* at 204-05.

The court more sharply rejected the department's appraisal. In doing so, the court raised broad questions about Healy's methodology.[10] Accordingly, the court stated, it "place[d] no reliance upon the conclusions" of Healy. *Id.* Unpersuaded by either party's appraisal, the court then considered whether it could independently determine the true value of the property under ORS 305.412. It concluded that it could not do so. Accordingly, the court affirmed the BOPTA value. 22 OTR at 206.

E.   *Attorney Fee Award*

In the wake of the tax court's decision, taxpayer sought an award of attorney fees under ORS 305.490(4)(a). As noted, that statute gives the Tax Court discretion to award attorney fees and expert witness fees incurred before a magistrate and in the Regular Division if the court "finds in favor of the taxpayer."[11] If that legal prerequisite is met,

---

[10] In particular, the court noted that Healy "lacked any experience" with appraising this type of property. 22 OTR at 206. He made only limited inquiry into the state of the market, based on his "unsupported" view that he should only consider the local market. *Id*. "Throughout his report and testimony, [Healy] * * * repeatedly indicated a profound inability to distinguish between value in use and market value." *Id*. He also "ignore[d] taxpayer's persuasive evidence" of substantial external obsolescence. *Id.*

[11] ORS 305.490 provides, in part:

"(4)(a) If, in any proceeding before the tax court judge involving ad valorem property taxation, exemptions, special assessments or omitted property, the court finds in favor of the taxpayer, the court may allow the taxpayer, in addition to costs and disbursements, the following:

"(A) Reasonable attorney fees for the proceeding under this subsection and for the prior proceeding in the matter, if any, before the magistrate; and

in exercising its discretion whether to award fees, the Tax Court must consider the factors set out in ORS 20.075(1).[12] If the court decides to make a discretionary award, then the court must consider the same factors, plus the additional factors found in subsection (2) of that statute, to determine the amount of the award. Taxpayer sought approximately $122,000 in attorney fees incurred litigating the case, plus $44,000 in expert witness fees.[13]

The department objected. Among other arguments, it asserted that ORS 305.490(4)(a) did not permit a fee award, because the Tax Court had not found "in favor of the taxpayer."

The Tax Court awarded the full amount of fees requested by taxpayer. The court initially held that its decision on the merits satisfied the legal prerequisite of being "in favor of the taxpayer" under ORS 305.490(4)(a). Although the court had ultimately rejected both appraisals and affirmed the BOPTA value, the court concluded that its rejection of the department's appraisal seeking a higher value higher amounted to a finding "in favor of the taxpayer."

The Tax Court then concluded that it should exercise its discretion to award attorney fees. The court initially concluded that the department's valuation was not objectively reasonable. The court reiterated that the department's theory was based on a "fundamental" error of using "value in use" rather than market value. Although Healy had attempted to rely on the especial property definition, the court concluded that he "could not explain or justify" that reliance.

The court also concluded that the department persistently had pursued its aggressive and unreasonable

---

"(B) Reasonable expenses as determined by the court. Expenses include fees of experts incurred by the individual taxpayer in preparing for and conducting the proceeding before the tax court judge and the prior proceeding in the matter, if any, before the magistrate."

[12] The text of that statute is set out below.

[13] That amount was based on taxpayer's estimate that 75 percent of her attorney's time was spent on defending against the department and county assessor's request for an increase in valuation of the property, rather than on her own request for a reduction in valuation.

valuation by repeatedly seeking a valuation of more than twice what BOPTA had found. Moreover, the court noted, in light of the constitutional requirements for determining maximum assessed value, the determination here would have affected taxpayer's property taxes for years to come, if not perpetually.

The court added that the department's aggressive and unreasonable valuation had made it necessary for taxpayer to appeal to the Regular Division in the first place—"to protect against" the department's position "that the property had been grossly undervalued by BOPTA." In the court's view, the department's valuation also likely had made settlement impossible. Finally, the court concluded that an award of fees was needed to deter "the type of claims made by [the department and county] and then so inadequately supported."

## II.   ANALYSIS

As noted, we ultimately review the Tax Court's decision to award fees for abuse of discretion. ORS 20.075(3). However, such an exercise of discretion can involve predicate factual and legal determinations. *See Oakmont, LLC v. Dept. of Rev.*, 359 Or 779, 789, 377 P3d 523 (2016). For predicate legal questions, we review for errors of law. ORS 305.445. For predicate factual issues, we review for "lack of substantial evidence in the record to support the tax court's decision or order." *Id*. Because this appeal requires us to consider whether the Tax Court's underlying valuation decision supported the award of fees, and because neither party has challenged the merits of that decision, we assume for present purposes that the Tax Court's decision correctly resolved the underlying legal and factual issues regarding the valuation.

### A.   *The Tax Court Ruled "in Favor of the Taxpayer" Under ORS 305.490(4)(a)*

We begin with the legal question whether the Tax Court had authority to make an attorney fee award under ORS 305.490(4)(a), which, as noted, permits an award if the Tax Court has found "in favor of the taxpayer." The department asserts that the Tax Court's decision on the merits did

not meet that criterion, an argument that (if accepted) would be dispositive. Accordingly, we address that issue first.

In construing ORS 305.490(4)(a), we consider its text in context, giving any pertinent legislative history such weight as is appropriate. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Again, that statute provides, in part:

> "If, in any proceeding before the tax court judge involving ad valorem property taxation, exemptions, special assessments or omitted property, the court finds in favor of the taxpayer, the court may allow the taxpayer, in addition to costs and disbursements, the following:
>
> "(A)   Reasonable attorney fees for the proceeding under this subsection and for the prior proceeding in the matter, if any, before the magistrate; and
>
> "(B)   Reasonable expenses as determined by the court. Expenses include fees of experts incurred by the individual taxpayer in preparing for and conducting the proceeding before the tax court judge and the prior proceeding in the matter, if any, before the magistrate."

The department argues that "ORS 305.490(4) does not authorize an award of attorney fees and costs when a taxpayer appeals to the Tax Court but obtains no reduction in tax assessment." For the reasons explained below, we reject that argument in the circumstances present here, where both parties on appeal requested a change in tax assessment, and the Tax Court rejected both requests.

Beginning with the text of the statute, we note that the meaning of the phrase "in favor of the taxpayer" is not self-evident. The phrase implies that the court must make a relative determination, in which it determines favorability by comparing the court's decision on the merits to some standard. The statutory text alone, however, does not explicitly identify that standard. One plausible textual reading would determine favorability by comparing the Tax Court's decision to the taxpayer's request for affirmative relief on appeal. That reading is narrow; under it, a finding would be in favor of the taxpayer only if the taxpayer sought and obtained at least some affirmative relief from the decision of the lower tribunal. That is the interpretation advanced

by the department. That narrow definition is not met here: Taxpayer did not succeed in having the BOPTA value reduced on appeal.

Another plausible reading, however, understands "in favor of" more broadly. That reading is not limited to the situation in which a taxpayer succeeds in obtaining affirmative relief on appeal (*i.e.*, the taxpayer persuades the court to reduce the BOPTA value). Instead, the broader reading also could include the situation where both parties request a change in valuation on appeal, and—even though unsuccessful in her own request for a reduction in value—the taxpayer persuades the court to reject the department's request for an increase. In that situation, the court's rejection of the department's request for a valuation increase would constitute a finding in favor of the taxpayer with respect to that request. That reading reflects taxpayer's position here.

With those competing views in mind, several related principles inform our analysis. First, the Tax Court reviews the valuation decisions of lower tribunals *de novo*. *See* ORS 305.425(1) ("All proceedings before the judge of the tax court shall be original, independent proceedings and shall be tried without a jury and de novo."). Thus, the proper benchmark for comparison of the outcome before the Tax Court in this case was the BOPTA valuation decision, and the court owed no deference to that valuation decision.

Second, when a party appeals the real market value of one or more of the components of a property tax account, any other party to the appeal also may challenge that value. Under ORS 305.287 (2011):

> "Whenever a party appeals the real market value of one or more components of a property tax account, any other party to the appeal may seek a determination from the body or tribunal of the total real market value of the property tax account, the real market value of any or all of the other components of the account, or both."[14]

---

[14] Although that statute was adopted after January 1, 2011, it was in effect and applied to taxpayer's appeals to the Magistrate Division and Regular Division. *See Village at Main Street Phase II v. Dept. of Rev.*, 356 Or 164, 170, 182-85, 339 P3d 428 (2014) (holding that that statute applied to appeals filed in either Magistrate or Regular Divisions after statute's effective date, September 29, 2011).

That statute thus permitted the department to affirmatively request an increase in the total real market value of taxpayer's property when taxpayer appealed BOPTA's valuation decision.

Third, the Tax Court also had authority "to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412. However, to avoid unfair surprise, the Tax Court's own case law required it to exercise its authority under ORS 305.412 within the range of values set out in the parties' pleadings. *See Chart Development Corp. v. Dept. of Rev.,* 16 OTR 9, 14-15 (2001) (to avoid unfair surprise and interference with department's ability to perform statutorily mandated supervisory function, Tax Court limits party to relief sought in pleadings); *see also Wilsonville Heights Assoc., Ltd. v. Dept. of Rev.,* 339 Or 462, 467 n 5, 122 P3d 499 (2005) (noting that holding). In short, the parties' opposing requests for relief from the BOPTA decision effectively set outside valuation limits for the Tax Court's decision on appeal.

With that understanding, we examine the text in context of ORS 305.490(4)(a). Although the meaning of the phrase "in favor of the taxpayer" may be uncertain based on its text alone, we conclude that, in context, it has a readily understood meaning as a term of legal art that is more consistent with the broader interpretation for which taxpayer advocates. Throughout the law relating to civil actions, statutes,[15] court rules,[16] and court opinions[17] regularly describe

---

[15] *E.g.,* ORS 18.810(2) (when creditor has garnished funds by provisional process, money will be paid back to debtor if "judgment is entered in favor of the debtor"); ORS 105.137(2) (in certain FED actions, if the defendant appears at the first appearance and the plaintiff does not, then "a default judgment shall be entered in favor of the defendant dismissing the plaintiff's complaint").

[16] *E.g.*, ORCP 21 A ("If the court grants a motion to dismiss, the court may enter judgment in favor of the moving party"; a court granting a party's motion to dismiss is not awarding that party affirmative relief); ORCP 47 B ("A party against whom a claim, counterclaim, or cross-claim is asserted *** may, at any time, move *** for a summary judgment in that party's favor[.]"); ORCP 61 A(1) ("A general verdict is that by which the jury pronounces generally upon all or any of the issues either in favor of the plaintiff or defendant.").

[17] *E.g.*, *Dowell v. Oregon Mutual Ins. Co.*, 361 Or 62, 65, 388 P3d 1050 (2017) ("After a hearing, the trial court granted defendant's motion [for summary judgment] and entered a judgment in defendant's favor."); *Wels v. Hippe*, 360 Or 807,

a judgment as being "in favor of" a party who successfully resists an opposing party's request for relief, without regard to whether the party herself obtained affirmative relief.

The department counters that the sole "claim" in a property tax appeal is "a request to determine the actual value of the property." According to the department, the Tax Court therefore can be deemed to have found in favor of a taxpayer only if it determines that the value of the property, as found by BOPTA, is too high. In support of that argument, the department relies on *Kaib's Roving R.Ph. Agency v. Employment Dept.*, 338 Or 433, 111 P3d 739 (2005), where, it asserts, this court interpreted the phrase "in favor of" in another attorney fee statute, ORS 183.497(1)(a), to require that a decision be "'of present benefit to [the] petitioner.'" We disagree with both parts of the department's argument.

First, the department's suggestion that the sole "claim" in a property tax appeal is "a request to determine the actual value of the property" obscures the fact that both parties made their own requests for affirmative relief from the BOPTA valuation. As we already have explained, if the department had not requested an increase in the BOPTA value on appeal, the BOPTA value effectively would have set the upper limit for the Tax Court's decision. However, the department's own request for affirmative relief on appeal expanded the upward limit for the Tax Court's decision above the BOPTA value and reset that limit to the higher value pleaded by the department. Viewed accordingly, even though the Tax Court made a single determination of value on appeal, it did so in the context of resolving countervailing requests for affirmative relief from the BOPTA decision that, as pertinent here, effectively functioned as separate claims by the parties.

Second, although the department relies on a definition that had been proposed to the court in *Kaib's Roving*, this court did not adopt that definition. In fact, to the extent

___

808, 388 P3d 1103 (2017) ("Defendants assert that this instruction requires the trial court to vacate its original judgment in favor of plaintiff and enter judgment in favor of defendants[.]"); *Harkness v. Platten*, 359 Or 715, 717, 375 P3d 521 (2016) ("This is a legal malpractice and negligent misrepresentation case where we review a trial court judgment directing a verdict in favor of Platten (defendant).").

that the court addressed the correctness of that definition at all, it seems to have questioned it. *See id*. at 442, 442 n 4 (questioning whether statutory words "in favor of" required that "'challenged order must be invalidated or altered in a way that is of present benefit to the petitioning party'" as asserted by department).

The department next argues that the legislative history of ORS 305.490(4)(a) shows that (1) the legislature equated "in favor of" with "prevailing party"; and (2) "prevailing party" had a recognized meaning when that statute was enacted, requiring that the party must have obtained some affirmative relief.

The first part of that argument—that the legislature equated "in favor of" with "prevailing"—does find some support in the legislative history.[18] The statutory text at issue was adopted in 2001 by Senate Bill 130. Or Laws 2001, ch 287, § 1. The history of that bill several times describes it as authorizing fees to a "prevailing taxpayer." *See* Staff Measure Summary, Senate Committee on Judiciary, SB 130, March 9, 2001; Staff Measure Summary, Senate Committee on Revenue, SB 130, March 26, 2001; Staff Measure Summary, House Committee on Judiciary, SB 130, May 10, 2001.

The second part of the department's argument, however—that "prevailing party" is a term of art indicating that a party must have received some affirmative relief— fails. Oregon law prior to 2001 expressly recognized that a "prevailing party" included a party who had successfully defended against another party's claim. In *Wilkes v.*

---

[18] However, we hasten to add that this court has previously refused to accept similar legislative history suggesting that "in favor of" means "prevailing party." In *Kaib's Roving*, the Employment Department had offered such legislative history. This court characterized that argument as "misplaced":

"Clearly, the legislature knew how to refer to a 'prevailing party' when that was what it intended. The fact that the legislature chose instead to refer in ORS 183.497(1) to a finding 'in favor of' a party suggests that it intended something different."

338 Or at 443 (in part because the legislature had used the words "prevailing party" elsewhere in the relevant chapter of the ORS). We need not consider whether *Kaib's Roving* is distinguishable or revisit its reasoning on that point. As we explain in the text, even if we agreed that "in favor of" should be understood to mean "prevailing party," that would not aid the department's position.

*Zurlinden*, 328 Or 626, 984 P2d 261 (1999), this court interpreted ORS 20.096(5) (1999), which provided that the "prevailing" party in an action on a contract is "the party in whose favor final judgment is rendered." The court left no doubt that the party in whose "favor" judgment is rendered includes a party who successfully defends against another party's request for affirmative relief:

> "Because defendants defeated plaintiff's claim, they are the party *in whose favor* final judgment was rendered on plaintiff's claim. Similarly, because plaintiff defeated defendants' counterclaim, he is the party *in whose favor* final judgment was rendered on defendants' counterclaim. Consequently, *both are prevailing parties on the claims on which they successfully defended.*"

328 Or at 633-34 (emphases added). In short, even if we agreed with the department that "in favor of" should be understood to mean "prevailing party," that would not support the department's position that, for the court to have found in her favor, taxpayer must have obtained a reduction in value from the BOPTA decision. To the contrary, *Wilkes* suggests that, when the legislature enacted ORS 305.490 (4)(a), it would have understood that a final judgment is (at least in part) in favor of a party who defeats another party's request for affirmative relief.

The legislative history of ORS 305.490(4)(a) is consistent with that understanding. The history shows that the legislature intended the attorney fee provision for property tax appeals to parallel an existing attorney fee award provision for income and inheritance tax appeals found in another subsection of the same statute: ORS 305.490(3)(a) (1999).[19] Then, as now, that provision authorizes attorney fee awards

---

[19] *See, e.g*, Staff Measure Summary, Senate Committee on Judiciary, SB 130, March 9, 2001 ("Current law allows the tax court judge to award attorney fees and costs to a prevailing taxpayer in income and inheritance tax appeals," but no similar provision exists for property tax appeals); Audio Recording, Senate Committee on Judiciary, SB 130, March 7, 2001, at 6:20 (testimony of Larry Tapanen, Tapanen Group, Inc.), http://records.sos.state.or.us/webdrawer/ webdrawer.dll/webdrawer/rec/4160427/ (accessed November 2, 2017) (noting that bill would extend to property tax appeals existing law regarding attorney fee awards in personal income tax); *id.* at 18:55 (statement of Mark Nelson, Oregon Metals Industries Council) (noting that bill would "mirror[] that process" that already exists for attorney fee awards in income tax appeals).

in income tax cases not only if the taxpayer obtained affirmative relief, but also if the department failed in its own request for relief against the taxpayer. Specifically, that subsection authorizes a discretionary award of attorney fees if the Tax Court:

> "grants a refund claimed by the executor or taxpayer or denies in part or wholly an additional assessment of taxes claimed by the Department of Revenue to be due from the estate or taxpayer[.]"

(Emphasis added.) In that respect, even though the legislature did not use identical phrasing in subsections (3) and (4)(a), the legislative history suggests that the legislature did not intend to limit attorney fee awards to those circumstances in which a taxpayer obtained affirmative relief.

In sum, based on the text, context, and legislative history of ORS 305.490(4)(a), we conclude that the legislature did not intend to restrict attorney fee awards in property tax appeals to the circumstance in which a taxpayer sought affirmative relief from the Tax Court and obtained it. In addition, the court finds in favor of a taxpayer where both parties request a change in valuation on appeal, and—even though unsuccessful in her own request for a reduction in value—the taxpayer persuades the court to reject the department's request for an increase.[20]

With that understanding, we turn to the facts. Before both divisions of the Tax Court, each party to the underlying appeal requested affirmative relief from the BOPTA valuation decision in their pleadings: In her complaints, the taxpayer asked both divisions to *reduce* the BOPTA value, while in its answers, the department and county assessor asked both divisions to *increase* the BOPTA value. By rejecting taxpayer's request for affirmative relief, both divisions of the Tax Court found in favor of the department and county assessor on taxpayer's request. However, at the same time, by rejecting the department and county assessor's request for affirmative relief, both

---

[20] Again, the department's assertion that the sole "claim" in a property tax appeal is "a request to determine the actual value of the property" overlooks the fact that both parties made their own affirmative requests for relief from the BOPTA valuation.

divisions found in favor of the taxpayer on that request. *See Wilkes*, 328 Or at 633-34 (where both parties successfully defended against other party's claims, judgment was in favor of both parties). Therefore, the Tax Court correctly concluded that the legal prerequisite under ORS 305.490(4)(a) for an award of attorney fees to taxpayer was satisfied. Accordingly, we turn to the question whether the Tax Court correctly exercised its discretion in awarding attorney fees to taxpayer.

B. *The Tax Court Did Not Correctly Exercise its Discretion in Awarding Attorney Fees*

As noted, we ultimately review the Tax Court's decision to award attorney fees to taxpayer for an abuse of discretion. ORS 305.490(4)(a); ORS 20.075(3). As further noted, insofar as the court's exercise of discretion was predicated on its resolution of questions of law or fact, those determinations implicate independent standards of review. *Oakmont LLC*, 359 Or at 789 (noting importance, in review of agency exercise of discretion, of distinguishing factual findings from legal conclusions); *see Barbara Parmenter Living Trust v. Lemon*, 345 Or 334, 342, 194 P3d 796, 801 (2008) (review of trial court's exercise of discretion; distinguishing between factual findings and legal conclusions).

When a statute provides for a discretionary award of attorney fees, the legislature has directed courts to consider the following factors in deciding whether to award fees:

"(a)  The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

"(b)  The objective reasonableness of the claims and defenses asserted by the parties.

"(c)  The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

"(d)  The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

"(e)   The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

"(f)   The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

"(g)   The amount that the court has awarded as a prevailing party fee under ORS 20.190.

"(h)   Such other factors as the court may consider appropriate under the circumstances of the case."

ORS 20.075(1).

The Tax Court determined that several factors supported its decision to award attorney fees to taxpayer. As we will explain, one of the factors on which the court relied—its determination that the department's persistent overvaluation of the property valuation had made it necessary for taxpayer to appeal—was not supported by evidence in the record and, therefore, was incorrect. Thus, we remand to the Tax Court for that court to exercise its discretion without considering that erroneous factor. We nevertheless discuss other factors relied on by the court, so as to minimize the need for a future appeal to this court.

First, the court concluded that the department's position regarding valuation was "objectively unreasonable," referring (presumably) to ORS 20.075(1)(b) ("objective reasonableness of the claims and defenses"). The department understands the Tax Court to have focused entirely on Healy's use of the "especial property" rule. Noting that both appraisers used the cost approach, the department asserts that the especial property rule was functionally irrelevant to the proper resolution of any issue in the underlying appeal. The result here, it contends, would have been the same whether the property was labeled as especial or not.

We do not agree that the Tax Court placed such narrow emphasis on the "especial property" rule; rather, it offered a broader criticism of the department's position. The court explained:

> "The law in Oregon is that value is to be value in exchange, not value in use or value to a particular taxpayer. The position of the county departed completely from this fundamental starting point. Attempting to use the notion of especial property, which the appraiser for the county could not explain or justify, that appraiser essentially argued that the value of the property must be equal to the amount taxpayer spent to build it. This position was rejected in the opinion issued by this court."

We find no error in that reasoning, either factually or legally. As we have already explained, the department has not challenged the premise that Oregon law requires the use of market value, not "value in use"; in fact, the department has endorsed that principle. Yet, there is evidence in the record as a whole that the department's appraiser departed from that principle. As noted, Healy specifically testified that he believed that just compensation value could be higher than market value. That statement is inconsistent with the department's own position that just compensation value is market value.

The Tax Court also did not err factually in stating that Healy's proposed value was essentially equal to the amount that the owner had spent building it. Healy used the cost approach without allowing for any depreciation or obsolescence. Nor did the Tax Court err factually in critiquing Healy's testimony about the especial property rule. Healy's testimony about especial property was confused, if not internally inconsistent. On the one hand, he asserted that the property's just compensation value—the value under the especial property rule—could be greater than its market value. On the other hand, he later asserted (at the end of a long and somewhat confusing exchange) that his valuation would be the same regardless of whether the property met the definition of "especial property."

In short, we conclude that the court did not err factually or legally. Factually, there was evidence in the record to support the Tax Court's determination that the department's appraisal incorrectly used "value in use" and that Healy could not adequately explain or justify his use of the "especial property" concept. Given Healy's assertion that just compensation value was different from market value—a

legal position that both the department and the county assessor disavowed in briefing to the Tax Court—the Tax Court did not err in concluding that the department's position was objectively unreasonable. *See Mattiza v. Foster,* 311 Or 1, 8 n 10, 803 P2d 723 (1990) (position is meritless "if it is not supported by the law as applied to the facts" (emphasis deleted)).

The department next asserts that the court misapplied the factor set out in ORS 20.075(1)(a), which directs a court to consider

> "[t]he conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal."

After noting that the department had persisted in pursuing an unreasonably high valuation throughout the litigation, the Tax Court added: "Persistence may not be bad faith or malicious, but it is willful." The department does not appear to challenge the factual content of that statement—that the department willfully persisted in its unreasonable valuation position. Instead, based on the common terminology—"willful," "bad faith," "malicious"—the department asserts that the court erred as a legal matter in concluding that those facts fell within the factor in ORS 20.075(1)(a). That factor, the department notes, applies only to "the conduct of the parties in the transactions or occurrences *that gave rise to the litigation,*" not to conduct during the litigation.

The department assumes that the Tax Court could only have meant to refer to the factor identified in ORS 20.075(1)(a), then asserts that ORS 20.075(1)(a) does not go so far, and then draws the conclusion that the Tax Court therefore abused its discretion. If we were to accept the department's position, however, we would place form over substance. A court is not limited to considering only prelitigation willfulness in deciding whether to award fees. The court also may consider any "other factors as the court may consider appropriate." ORS 20.075(1)(h). We do not discern any legal error in basing an award of attorney fees in part on a party's persistence in pursuing an objectively unreasonable

position *during* the litigation. Nor was it legally erroneous for the court to characterize such persistence as "willful," regardless of whether that term might have a more technical definition in subsection (1)(a) (as the department suggests). Accordingly, we reject the department's contrary argument.

The department also asserts that the Tax Court lacked a factual basis in the record to find that the department's position "more likely than not" hindered settlement. *See* ORS 20.075(1)(f) (court may consider"[t]he objective reasonableness of the parties * * * in pursuing settlement of the dispute"). The department objects that there is no direct evidence in the record regarding settlement discussions. We do not believe that the Tax Court erred in drawing inferences from the evidence that was in the record. By the time of trial, taxpayer had proposed a value that was 95 percent of the BOPTA valuation. The department's proposed value, however, was more than twice the BOPTA value. In her petition for attorney fees, taxpayer offered evidence that the department had not expressed any desire to settle the case. In light of that evidence, the court did not err factually in inferring that the department's unreasonably high valuation hindered settlement.

As noted, however, we nevertheless conclude that the Tax Court's exercise of discretion was based in part on an incorrect factor. Specifically, the court's order awarding attorney fees stated:

> "The court accepts the argument of taxpayer that an appeal of the decision in the Magistrate Division was necessary to protect against what appeared to be, and turned out to be, a persistent position of the county that the property had been grossly undervalued by BOPTA."

Later, the court reiterated the same point, albeit more ambiguously:

> "[T]he persistence with which the [valuation] position was advanced left taxpayer with no alternative but to expend significant amounts to defend against the position taken by [the department and the county] in the case."

The court appears to have been referring to the following assertion contained in an affidavit submitted by taxpayer:

"The [taxpayer's] proceedings at the Regular Division were made necessary by the Assessor's insistence on a higher [real market value] and my belief (now confirmed by the Court) that Mr. Healy's appraisal methodology was incorrect, leaving the Assessor with no demonstrated rationale for the property's [real market value]."

We cannot agree that substantial evidence in the record supports the factual finding that the department's persistent over-valuation of the property made taxpayer's appeal to either division of the Tax Court necessary.[21] Taxpayer, not the department, appealed the BOPTA order to the Magistrate Division and then appealed the magistrate's affirmance of the BOPTA order to the Regular Division of the Tax Court. By appealing those decisions, taxpayer opened the door for precisely what the department ultimately did: present its higher value appraisal to another tribunal. *See* ORS 305.412 (once real market value of property is at issue, Tax Court has authority "to determine the real market value * * * on the basis of the evidence before the court, without regard to the values pleaded by the parties"); ORS 305.287 (2011) ("Whenever a party appeals the real market value of one or more components of a property tax account, any other party to the appeal may seek a determination from the body or tribunal of the total real market value of the property tax account * * *.").

In short, substantial evidence is lacking in the record to support a finding that it was necessary for taxpayer to appeal (either to the Magistrate Division or the Regular Division) in anticipation of a possible last-minute appeal by the department or county. The statutes just mentioned, ORS 305.412 and ORS 305.287 (2011), would have allowed taxpayer to seek a lower valuation during any appeal by the department or the county, precisely as taxpayer's appeals did not preclude the department and county from seeking a higher valuation. *See* ORS 305.412 (statutory text addresses court's ability to consider evidence before it and does not create or refer to any pleading requirement); *Ellison*, 22 OTR at

---

[21] It is not entirely clear from the court's comments whether it meant to focus exclusively on taxpayer's appeal to the Regular Division or whether it also determined that taxpayer's appeal from BOPTA's order to the Magistrate Division was necessary. Accordingly, we address both issues.

202 n 1 (ORS 305.412 permits a party to "request that the court reach a proper value above *or below* that determined in prior proceedings" (emphasis added)).

At oral argument, taxpayer appeared to offer a different legal rationale for the Tax Court's determination by suggesting that the department might somehow try to collaterally attack the magistrate's ruling in future tax years based on its aggressive and erroneous theories about the value of the property. Taxpayer implied that an appeal to the Regular Division therefore was necessary to put an end to that effort. However, taxpayer has not explained how—assuming that there had been no appeal to the Regular Division—the department in ensuing tax years could have collaterally challenged the final valuation decision by the magistrate for the tax year at issue. To the contrary, as taxpayer herself acknowledged, it was the value finally accepted by the court—not the value proposed in a rejected appraisal—that would establish a baseline for the valuation of the property in future years.[22]

In sum, we find neither legal support nor substantial evidence in the record for the Tax Court's determination that the department's persistent over-valuation made taxpayer's appeals necessary. Taxpayer's complaint in the Regular Division offers a more plausible reason for the appeal. That complaint asserted that the BOPTA value adopted by the magistrate should be reduced by almost half—a reduction in value of more than $4 million. Although it is not clear from the record what valuation taxpayer sought in the Magistrate Division, taxpayer appears to admit that she sought an even lower value from BOPTA: $1,787,320. In considering why taxpayer filed her appeals, then, her initial quest to obtain a major reduction in value (and thus her property tax) provided a more plausible incentive than speculative anticipation of possible appeals by the department and the county.

---

[22] The Tax Court stated in its order:

"In this case exception value was at issue. The outcome of the case would burden or benefit a party for a significant period of time, if not perpetually."

Taxpayer's brief similarly asserts:

"[T]he 2011 tax year was significant to both Ms. Ellison and the Assessor. It was the last year that the Assessor could utilize, under ORS 308.153, an 'exception value' attributable to new construction."

We thus conclude that the Tax Court's determination that the department's persistent over-valuation of the property made taxpayer's appeals to the Tax Court necessary is not supported by substantial evidence in the record. That erroneous determination appears to have been an integral part of the court's decisionmaking both in determining whether to award fees to taxpayer and in setting the amount of the award. We therefore remand for the Tax Court to reconsider first whether it should exercise its discretion to award fees to taxpayer by evaluating the other, permissible factors, and without giving consideration to the erroneous one. In the event that the court determines that it is appropriate to award fees, the court should then determine the amount of fees to be awarded based on the factors set out in ORS 20.075(1) and (2), again without giving consideration to the erroneous factor.[23]

## III.   CONCLUSION

To summarize: We conclude that, by rejecting the department and assessor's request for an increase in the BOPTA valuation, the Tax Court here found "in favor of the taxpayer" on that request and, therefore, had discretion to award attorney fees to taxpayer under ORS 305.490(4)(a). In reviewing that exercise of discretion, we uphold the majority of the factors that the court relied on in deciding to award fees. We conclude, however, that one of the factors was not supported by substantial evidence in the record and, therefore, was erroneous. Accordingly, we vacate the order of the Tax Court awarding fees and remand for that court to exercise its discretion whether to award fees without considering the erroneous factor and to determine the amount of any fee award under ORS 20.075(1) and (2).

The supplemental money judgment of the Tax Court is vacated. The matter is remanded to the Tax Court for further proceedings.

---

[23] Because the court will be required on remand to reconsider (without regard to the erroneous factor) both its decision to award fees and, if it does, the amount of fees to be awarded, we do not address the department and assessor's alternative contention that the amount of fees awarded was excessive "in view of [taxpayer's] limited success."