IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

JERRY LINSTROM,                          )
                                         )
           Plaintiff,                    )    TC-MD  230080N (Control)
                                         )
    v.                                   )
                                         )
LINCOLN COUNTY ASSESSOR,                 )
                                         )
           Defendant.                    )
_____  )
                                         )
JERRY LINSTROM,                          )
                                         )
           Plaintiff,                    )    TC-MD  240089N
                                         )
    v.                                   )
                                         )
LINCOLN COUNTY ASSESSOR,                 )
                                         )
           Defendant.                    )    **DECISION**

Plaintiff appealed the value of property identified as Account R61258 (subject property) for the 2022-23 and 2023-24 tax years.  A trial was held by remote means on November 18, 2024, and December 2, 2024.  Plaintiff appeared on his own behalf.  Ric Becker (Becker), Certified Residential Appraiser, testified on behalf of Plaintiff.  Peter Burch (Burch) and Ben Perrine appeared on behalf of Defendant.  Burch, Registered Appraiser, testified on behalf of Defendant.  Plaintiff's Exhibits 1 to 5 (for case 230080N) and 1 to 3 (for case 240089N), and Defendant's Exhibits A and B were received without objection.[1]  The parties filed written closing arguments by January 10, 2025.  This matter is now ready for decision.

/ / /

---

[1] Plaintiff objected to Defendant's selection of comparable sales, but that objection goes to weight.

## I.  STATEMENT OF FACTS

The subject property is a parcel of land along the Siletz River near Lincoln City and Gleneden Beach.  (Def's Ex A1.)  It was improved with a shed, a dock with a ramp, and a fence. (*See* Ptf's Ex 1 at 3; Def's Ex A1.)  It included water and power but not septic.  A 2017 letter from the county Department of Planning and Development stated that, based on an aerial map, it

> "appears that a[n] onsite septic system would not meet requirements for setbacks from surface water * * *.  The only options at this time would be to try and get an easement from a neighboring property to place a drainfield or apply for a variance from DEQ to overcome the setback requirements."

(Ptf's Ex 1 at 15.)  A second 2017 letter from the department states that, if the subject property "cannot get septic approval, then we would not approve a permit to build on the lot."  (*Id.* at 16.) For purposes of determining the real market value, both appraisers treated the subject property as though it were not buildable.  Becker characterized the permissible use of the subject property as for recreation only.  (Ptf's Ex 1 at 7.)

The parties disagree on the size of the subject property site as well as the improvements. Plaintiff maintains that the site was 3,750 square feet whereas Defendant maintains it was 5,028 square feet.  (Ptf's Ex 1 at 3, Def's Ex B1.)  The difference has to do with the measurement of the lot based on the high-water line.  Becker initially used the same site size as Defendant (5,028 square feet) but revised his figure in response to a new survey provided by Plaintiff.  That revision caused Becker to change his opinion of value as of June 2022 from $49,000 to $47,000, a difference of $2,000.  (*Compare* Ptf's Ex 1 for each case.)

With respect to the improvements, the shed was built around 2012, and the dock and ramp were built before 1976.  (Ptf's Ex 1 at 7.)  Plaintiff testified that he built the fence in 2017. He maintains the dock was 546 square feet "of actual usable dock surface" and the ramp was 170 square feet, for a total of 716 square feet.  (Ptf's Ex 1 at 10; Ptf's Ex 3 at 1.)  Burch testified that

the dock and walkway was 1,321 square feet. Plaintiff explained that he reduced the size of the dock and ramp by removing rotten wood, relocating railings, and adding safety railings to the dock. Becker wrote that he "walked" the dock and observed "substantial rot" and one corner that "appears to be sinking[.]" (Ptf's Ex 1 at 7.)

Both appraisers used the sales comparison approach to develop an opinion of value for the subject property for the two tax years at issue. They differed in their selection of comparable sales. Becker testified that he emphasized selecting properties on which septic was not allowed. He selected only two sales on the Siletz River, testifying that other riverfront properties would have similar appeal to anglers as the subject property. Burch disagreed, questioning whether the other rivers (Salmon and Wilson) were navigable. He testified that he emphasized selecting sales along the Siletz River. Even though all but one of his sales had septic (two had "illegal" septic), Burch testified that 2024 FEMA floodplain maps effective in December 2024, rendered all the sales "unlikely" buildable as of that date. (*See* Def's Ex B.) He viewed all his sales as offering the same utility as the subject property: a lot to park an RV and go fishing.

A.    *Plaintiff's Sales Comparison Approach*

Becker provided two appraisal reports but confirmed at trial that the only difference between the reports was the change in the subject property site size. (*See* Ptf's Ex 1 at 6.) The effective date of each report is the same: June 2022. Although Becker made time adjustments to all sales before 2022, he was unable to identify a time trend from which real market value could be determined as of January 1, 2022, or January 1, 2023.[2] (*See id.* at 3-5.) He did not identify any sales after April 2022. (*See id.*)

---

[2] Becker wrote that "a matched pairing of sales #1 and #2" indicated an eight percent annual adjustment. (Ptf's Ex 1 at 8.)

Becker identified nine comparable sales that occurred between June 2019 and April 2022, for unadjusted prices ranging from $35,000 to $140,000.[3] (Ptf's Ex 1 at 3-5.) Becker testified that he confirmed all his comparable sales with listings agents or brokers. His considered sales 1 to 3 to be the most comparable. Each was identified as "unbuildable" with no septic approval. (*Id.* at 3.) Two were on the Salmon River Highway, approximately nine miles away, and the third was on the Wilson River, 41.54 miles away. (*Id.*) Sales 1 to 3 sold for unadjusted prices ranging from $43,500 to $55,000. (*Id.*) Becker adjusted each sale downward to a range of $42,000 to $47,500. (*Id.*) His sales 5 and 6 were on the Siletz River. (*Id.* at 4.) Comparable sale 5 sold for $80,000 on May 21, 2021, and Becker adjusted the price down to $47,000, largely based on site size and the allowance of septic. (*Id.*) Sale 6 sold for $125,500 on June 7, 2021. (*Id.*) Becker adjusted the price down to $51,000, based on site size, improvements age, and an onsite septic tank. (*Id.*) He concluded a real market value of $47,000. (*Id.* at 3.)

In addition to time adjustments for sales before 2022, Becker adjusted for lot size, view, improvements, utilities, and lack of "detriments." (Ptf's Ex 1 at 3-5, 8.) Defendant questioned Becker's selection of sales as far away and Tillamook (43 miles) and inconsistencies in his adjustments.[4] (*See id.* at 3 (inconsistent adjustment for utilities between sales 1 to 3).) Defendant also questioned how the subject property could be worth less in 2022 and 2023 than what Plaintiff originally paid for it.[5] Plaintiff responded that he learned the site was smaller than he thought at the time of purchase due to the high water line, removed a dock and ramp in 2016,

---

[3] Becker testified that sales 7 to 9 were not comparable and only included for support. (Ptf's Ex 1 at 5.)

[4] Sale 4 was located 43 miles away. (Ptf's Ex 1 at 4.) It was nearly nine acres, but mostly under bay water with "very reduced utility[.]" (*Id.*) It sold for $35,000 in April 2021, and Becker adjusted it to $47,000. (*Id.*)

[5] Plaintiff purchased subject property for a total of $65,000 in 2014 and 2015. *See Linstrom v. Dept. of Rev.*, 24 OTR 223, 224 (2020). The subject property was originally two separate tax lots. *Id.* Plaintiff purchased the first lot for $30,000 in 2014 and the second lot for $35,000 in 2015, and then combined them by 2017. *Id.*

removed a boathouse in 2017 or 2018, and "downsized" the remaining dock and ramp by 2020. He believes those changes fully account for the loss in value.

B.      *Defendant's Sales Comparison Approach*

Burch used the same set of seven comparable sales for the two tax years at issue and applied different time trends. (Def's Ex B.) The sales occurred between April 2021 and September 2024, except for sale 3 in October 2018. (*Id.*) All but sale 3 had an earlier sale, allowing a for a time trend calculation. (*See id.*) Burch testified that he has personally visited all the comparable properties. He made a $50,000 adjustment for properties with legal septic, and a $25,000 adjustment for illegal septic. (*See id.*) Burch made additional adjustments for site size, location, and improvements. (*Id.*) His sale 7 is the same as Becker's sale 6, though Burch concluded an adjusted value of $116,962 for the 2022-23 tax year and $137,321 for the 2023-24 tax year, compared with Becker's adjusted value of $51,000 as of June 2022. (*See id.*) For the 2022-23 tax year, Burch found an adjusted value range of $78,920 to $208,642. (*Id.*) For the 2023-24 tax year, Burch found an adjusted value range of $93,763 to $242,544. (*Id.*)

Plaintiff questioned Burch's adjustments, particularly for the dock. Burch adjusted his sales that lacked a dock upward by $30,512 whereas Becker adjusted by $4,500. (Def's Ex B; Ptf's Ex 1 at 10.) Both Becker and Burch used Marshall and Swift valuation service to adjust for the dock. Becker used $57 per square foot base rate for a cost new of $31,112 for the dock. (Ptf's Ex 1 at 10.) He applied a depreciation factor of 84 percent based on the subject property's 55-year age and average quality, concluding a depreciated cost value of $4,978, which he further rounded down to $3,000 because the dock was "built earlier than when records were first maintained back in year 1976." (*Id.*) Becker then added $1,500 for the ramp, arriving at a total contributory value of $4,500 for the dock and ramp. (*Id.*) Becker testified that a likely buyer

would view the subject dock and walkway as a tear-down. They are both old and the walkway is awkwardly narrow. Burch did not provide a written analysis of his cost approach but testified that he used a base rate of $47.50 per square foot and a depreciation factor of 35 percent (based on his estimate that the dock was 65 percent good), arriving at a depreciated value of $30,512.

Becker testified concerning Burch's comparable sales, noting sale 1 was much larger than and superior to the subject property. It included septic, a finished cabin with a half bathroom, a gate, and fencing. Sale 2 was also superior, with septic, a fence, a concrete RV pad, and 2,032 square feet of asphalt, whereas the subject property had only gravel. Sales 4 and 6 were both larger than the subject property and included septic. Sale 3 with illegal septic and sale 5 with potential septic depending on a water table study were both closer to Plaintiff's requested value.

C.      *Tax Roll Values*

For the 2022-23 tax year, the subject property's tax roll real market value, sustained by the board of property tax appeals (board), was $101,790 and its maximum assessed value was $114,890. (Compl at 1.) For the 2023-24 tax year, its real market value, sustained by the board, was $122,210 and its maximum assessed value was $114,890. (*Id.* at 2.)

## II. ANALYSIS

The issues presented are the subject property's 2022-23 and 2023-24 real market values. "Real market value" is "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205(1).[6] The assessment date for the 2022-23 tax year was January 1, 2022, and the assessment date for the 2023-24 tax year was January 1, 2023. ORS 308.007; ORS 308.210.

---

[6] The court's references to the Oregon Revised Statutes (ORS) are to 2021.

Real market value "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue * * *." ORS 308.205(2). Three approaches to value must be considered but may not be applicable in every case: the cost approach; the sales comparison approach; and the income approach. Oregon Administrative Rule (OAR) 150-308-0240(2)(a); *see also Dept. of Rev. v. River's Edge Investments*, 359 Or 822, 827, 377 P3d 540 (2016). Both parties here used the sales comparison approach, which "estimates value from the prices paid for similar properties." *Rivers Edge*, 359 Or at 827. "[T]he sales comparison approach relies on sale prices of other properties that can serve the same highest and best use as the subject property." *Hewlett-Packard Co. v. Benton County Assessor*, 357 Or 598, 603, 356 P3d 70 (2015). "In utilizing the sales comparison approach, only actual market transactions of property comparable to the subject, or adjusted to be comparable, may be used." OAR 150-308-0240(2)(c). The fewer adjustments required the better to ensure properties are truly comparable. *Allen v. Dept. of Rev.*, 17 OTR 248, 262 (2003).

Plaintiff bears the burden of proof by a preponderance of the evidence, which means "the greater weight of evidence, the more convincing evidence." ORS 305.427; *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

A.      *Subject Property's 2022-23 Real Market Value*

The subject property's most salient features are its location along the Siletz River, close to Lincoln City and Gleneden Beach, and the fact that it was not buildable. For the 2022-23 tax year, sales that occurred closer to January 1, 2022, are more persuasive. From the set of sales identified by Becker and Burch, the following are most comparable to the subject property in

those respects: Becker's sale 5, Becker's sale 6/Burch's sale 7, and Burch's sale 5.[7]

Becker did not adjust his sales for location,[8] whereas Burch made adjustments ranging from $11,902 to $30,524, with larger adjustments for locations further from Lincoln City. The court accepts Burch's location adjustments. Both appraisers made time adjustments, though Becker's were not adjusted to the correct assessment date,[9] so the court accepts Burch's time adjustments. Both appraisers used a $50,000 adjustment to properties with septic, so the court accepts that adjustment. Becker adjusted $15,000 for the allowance of septic, which the court also accepts. Becker made an additional $10,000 adjustment for the lack of "detriments," which the court rejects as inadequately supported. Becker made large site size adjustments ranging from $11,500 to $24,500, which the court rejects as inadequately supported. Instead, the court accepts Burch's site size adjustments ranging from $933 to $14,806.

The appraisers disagreed on the appropriate adjustment for improvements. Becker adjusted $6,500 for the shed, dock, fence, and ramp, based on his cost calculation using Marshall

---

[7] Becker's sales 1 to 3 were not buildable, but they were located on different rivers, the Salmon and Wilson specifically, and at a distance from the subject property. Burch's sales 2, 4, and 6 had septic and were potentially buildable, indicating a different highest and best use from the subject property. Burch considered all his sales as "unlikely buildable" based on FEMA floodplain maps in effect as of December 2024. However, he offered no evidence that those maps were knowable as of either assessment date at issue, or as of the date of any of his comparable sales. *See Pacific Ethanol Columbia, LLC v. Morrow County Assessor*, TC-MD 200380N, 2023 WL 3297100 at *1-2 (Or Tax M Div, Apr 20, 2023) (discussing when to consider post-assessment date information). Burch's sales 1 and 3 each had "illegal septic," indicating they may not be buildable, but the sales were remote in time from either assessment date: September 2024 and October 2018, respectively.

[8] Becker adjusted his sales 7 to 9 for location, but did not place any weight on them.

[9] Plaintiff's failure to offer an appraisal report for the correct assessment date is a recurring problem. *See Linstrom*, 24 OTR at 231, 233 (Becker valued the subject property as of February 3, 2018, for the 2017-18 tax year, and as of February 4, 2019, for the 2018-19 tax year); *Linstrom v. Lincoln County Assessor*, TC-MD 220086R, 2023 WL 3196495 at *1, *4 (Or Tax M Div, May 2, 2023) (Becker valued the subject property as of June 6, 2022, for the 2021-22 tax year, and court noted this was a repeat error). From the court's description of the comparable sales, the adjustments, and the effective date, it appears that Plaintiff has submitted the same appraisal report in this case as in his 2021-22 tax year appeal. *See generally Linstrom*, 2023 WL 3196495. In that case, the court declined to rely on Plaintiff's appraisal report, noting a 17-month gap between the assessment date and the report. *Id.* at *4. Here, the gap between the report date and assessment date is only six months.

and Swift valuation service.  By contrast, Burch adjusted $30,512 for the dock and ramp, $4,859 for the shed, and $5,276 for the fence, for a total adjustment of $40,647.  Neither appraiser offered additional evidence to support his calculation, such as a paired sales analysis or cost tables.  It appears likely that the appropriate adjustment lies in between the two figures.

The court begins with the sale used by both appraisers: Becker's sale 6/Burch's sale 7 for $125,250 on June 4, 2021.  Becker concluded an adjusted value of $54,000, but the court rejects his downward adjustments for site size ($11,500) and detriments ($10,000).  He also adjusted downward by $10,000 for a newer dock.  Burch concluded an adjusted value of $116,962, including an upward adjustment of $21,358 for a dock, signaling that the subject property dock was superior by that amount.  A photo of Becker's sale 6 shows a dock with a ramp that appears similar to the subject property, albeit on a steeper slope above the river.  (*Compare* Ptf's Ex 1 at 20-22 with 24.)  No dimensions were given for the size of sale 6's dock and ramp.  Removing the dock adjustment from both appraisals indicates an adjusted value of $85,500 to $95,604.

Becker's sale 5 was for $80,000 in May 2021.  The court applies a location adjustment of $11,902 based on its similar location to Becker's sale 6/Burch's sale 7.  The court accepts Becker's $6,500 upward adjustment for time and his $15,000 downward adjustment for the allowance of septic.  The court rejects his unsupported downward adjustment of $10,000 for a lack of detriments.  Becker did not make any adjustments for improvements.  His report noted a "tear-down house," but the picture provided was inconclusive as to what improvements existed, if any.  (*See* Ptf's Ex 1 at 4, 24.)  With those adjustments, Becker's sale 5 indicates an adjusted value of $83,402, which may be somewhat understated if it had any improvements.

Burch's sale 5 was for $48,000 in August 2023, and he concluded an adjusted value of $78,920.  As adjusted, the three sales indicate a value range of $78,920 to $95,604 for the subject

property as of January 1, 2022.  The court finds a 2022-23 real market value of $90,000.

B.      *Subject Property's 2023-24 Real Market Value*

Becker's sales are not particularly helpful for the 2023-24 tax year because none occurred after April 2022, and he offered no time adjustments to January 1, 2023.  Moreover, his two most relevant sales, 5 and 6, occurred in May and June 2021, respectively.  Burch's two most relevant sales, 5 and 7, offer little help for the January 1, 2023, assessment date.  Burch's sale 7 is the same as Becker's sale 6, which occurred in June 2021.  That leaves Burch's sale 5, which occurred in August 2023, and for which Burch determined an adjusted value of $93,763.

"Usually, one sale does not make a market."  *Truitt Bros., Inc. v. Dept. of Rev.*, 302 Or 603, 609, 732 P2d 497 (1987) (stating general rule but finding an exception in the case of a cannery sale in Salem used to value a second cannery in Salem).  Here, the court is left with one relevant sale for the 2023-24 tax year, which is insufficient to determine a real market value for that year.  It appears that the subject property's 2023-24 real market value may be overstated based on the court's 2022-23 real market value.[10]  However, without sufficient evidence on which to ground a sales comparison analysis, the court is unable to determine the correct real market value in this appeal.

### III.  CONCLUSION

Upon careful consideration, the court finds that the subject property's 2022-23 real market value was $90,000.  The court received insufficient evidence from which to determine the subject property's 2023-24 real market value.  Now, therefore,

/ / /

---

[10] For the 2022-23 tax year, the court found that the subject property's real market value should be reduced from $101,790 to $90,000.  For the 2023-24 tax year, the subject property's tax roll real market value was $122,210.

IT IS THE DECISION OF THIS COURT that, for the 2022-23 tax year, the real market value of property identified as Account R61258 was $90,000.

IT IS FURTHER DECIDED that Plaintiff's appeal for the 2023-24 tax year is denied.

_____

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*This Decision was signed by Presiding Magistrate Allison R. Boomer and entered on May 13, 2025.*